# DAVID M. EVANS vs. MICHAEL MURPHY.

*Evidence—Refreshing Recollection of Witness—Liability of Land-
lord to Tenant for Injury to Property and Business—Independent
Contractor—Damages.*

When the question at issue is the amount of damage caused by water
to articles of merchandise, a witness who examined the articles soon
after the damage and then made a memorandum relating to the
same, may afterwards in giving his testimony refer to the memoran-
dum for the purpose of refreshing his recollection, if he knows that
the same is correct.

A landlord is liable to his tenant for damages caused to the latter's
property in consequence of alterations in the building made in pur-
suance of a defective plan adopted by the landlord, although a com-
petent builder was employed to do the work.

The rule that a party is not liable for the negligent manner in which
an independent contractor employed by him does certain work upon
the former's land, is not applicable to a case where the thing directed
to be done is itself a nuisance, or the immediate cause of injury to
others.

One who employs a blacksmith to make alterations in a building is
liable for the consequences of the latter's unskilfullness under cir-
cumstances where he would not be liable if he had employed a com-
petent builder who acted as an independent contractor.

Plaintiff was defendant's tenant, occupying a store containing genera
merchandise underneath a hall used by defendant.   The roof was
supported by posts in the hall.   For the purpose of making alter-
ations, defendant directed the posts to be removed and the roof to
be supported by iron bars running across the building and fastened
outside.   The roof broke through with the weight of snow upon it,
and a large quantity of snow and water fell into the hall and thence
ran down upon the plaintiff's goods.   Plaintiff removed the goods
to another building where they remained piled up in a damp con-
dition for three days.   In an action to recover damages for the injury
to the property and to plaintiff's business, *Held,*

1st. That if the method adopted for supporting the roof, in view of an
usual fall of snow, was insufficient, the defendant was liable for such
damage.

2nd. That evidence as to the condition of the goods three days after
the injury was admissible to show the extent of the injury, and also
whether plaintiff exercised due care to avoid the consequential
damage.

3rd. That plaintiff was entitled to recover for the injury to his business as well as to the goods, and that evidence as to the amount of his profits before and after the injury was admissible.

Appeal from the Circuit Court for Allegany County (SLOAN, J.) At the trial the following prayers offered by the plaintiff were granted:

1st. If the jury find from the evidence in the case that, on the 6th day of February, 1897, the plaintiff was the tenant of the defendant of a portion of the ground floor of a building in Lonaconing, known as the " Town Hall," owned by the defendant, comprising one store-room and several dwelling-rooms on said floor, and, as such tenant has the right to occupy said rooms, as such store and dwelling-rooms, to the first day of April, 1897 ; and that the second floor of said building consisted of a hall covered by a flat, or nearly flat, roof, which roof was supported along through the centre of said hall by posts reaching from the floor of said hall to the beams supporting said roof, and that a short time before the sixth day of February, 1897, the defendant took out all said posts and supports upholding said roof, and in place of said posts attempted to support said roof by stretching across under said roof from four to seven iron rods, and the defendant in making said change so carelessly and negligently attached said rods to said building and to each other, that the same pulled apart or broke on account of the weight of said roof and snow and water accumulated thereon, thereby precipitating said roof, snow and water down on the second floor, from which said water and the water from said melting snow, ran through and down upon the plaintiff's premises and damaged and injured his store-goods, household goods and other personal property in said premises, as testified to by the witnesses, whereby the plaintiff was compelled to vacate said premises and do business elsewhere, and that the appliances and arrangements of the defendant aforesaid for holding up said roof were dangerous and insufficient, or carelessly and negligently constructed, and that by reason of said careless, negligent and dangerous

appliances of the defendant for sustaining said roof said accident occurred, and that the plaintiff before, at the time of, and after said accident, was using ordinary care and caution on his part for the protection of his property aforesaid, then the plaintiff is entitled to recover; (modification) unless, however, the jury shall find that the fall of snow and rain on February 6th, 1897, was so extraordinarily great and heavy as could not have been anticipated at the time of making the alterations aforesaid, and that the same caused the damage complained of in this case without the negligence of the defendant.    (Granted with modification).

2nd. If the jury find the facts set out in the first prayer and find for the plaintiff, then the plaintiff is entitled to recover in this action the fair market value of all goods, wares and merchandise, if any, then in said rented premises which the jury may find from the evidence were destroyed or rendered worthless by said water being precipitated upon it, and also the fair value of any injury done, if any, to the other goods, wares and merchandise and chattels of the plaintiff by said water, and which could not have been avoided by reasonable care by the plaintiff, and may, in addition to the same, allow the plaintiff for all such loss the jury may find, if any, which the plaintiff unavoidably sustained by reason of said accident in the interruption of his trade and business.    (Granted).

The jury returned a verdict for the plaintiff for $554.29.

The cause was argued before McSHERRY C. J., BRYAN, .FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ. (Feb. 10, 1898).

*George A. Pearre* and *Ferdinand Williams*, for the appellant.

*Benjamin A. Richmond* and *David J. Lewis*, for the appellee.

PAGE, J., delivered the opinion of the Court.

This suit was instituted by the appellee to recover dam-

ages for injury to his property and business, occasioned, it is alleged, by the careless conduct of the appellant.

The appellant was the owner of a building situate in the town of Lonaconing, two stories in height, and divided on the first floor into several rooms, with a large hall covering the entire upper floor. The appellee was the tenant of one of the lower rooms, which was used by him as a store-room for the storage and sale of merchandize, such as is usually kept in a country store. His tenancy was from year to year, beginning from the first day of May, so that he was entitled to the possession and use of the premises until the first day of May, 1897. The flat tin roof that covered the building was supported in part by a line of posts running lengthwise the building, through the centre of the hall. In December, the appellant, with the view of making alterations in the building, removed these posts, and undertook to support the roof by means of iron bars running across the building. These bars were fastened on the outside of the building, and were in three pieces joined not by being welded, but hooked to each other by bent ends. On the sixth day of February snow having fallen and accumulated to the depth of several inches on the roof, the ends of the rods pulled apart under the pressure and precipitated large quantities of snow and water down upon the floor of the hall in the second floor, from whence water ran through into the room of the appellee, rendering it untenantable and greatly damaging his property. It is alleged that all this damage was done to the appellee and his property by the careless and negligent weakening of the supports under the roof by the appellant.

The first exception presents a question of evidence. The appellee having presented himself as a witness, testified that immediately after the accident he and his neighbors went to work as fast as they could carrying out the goods and placing them in a store-room near by, and left them piled up wet on the floor, where they remained for three days, during which time he was occupied in attending the funeral of

his wife's mother in an adjoining State ; that on Tuesday (the accident having occurred the preceding Saturday) he examined the goods carefully and made a memorandum of each article and the extent to which it had been damaged. He produced the memorandum and was about to read from it, but the counsel for the appellant objected to the use of the paper, and also to the witness stating what the condition of the goods was when the examination of them was made. The Court overruled these objections and permitted the witness to testify as to the condition of the goods on Tuesday, and further ruled that the witness " could not read the paper to the jury, and that it could not be used by the witness except for the purpose of refreshing his recollection, but that the witness might take the paper and refresh his recollection therefrom." Having already testified that the entries upon the paper were made by himself, contemporaneously with the examination of the goods, it was proper for the witness to use the memoranda for the purpose of refreshing himself. And even if he was unable to recall each article independently of the paper, yet if he made it himself and knew it was correct when so made, he could so testify. *Martin* v. *Good*, 14 Md. 411; *Green* v. *Caulk*, 16 Md. 572.

The objection of the appellant, however, goes to the general admissibility of the evidence, upon the ground, that the goods having remained piled up in a wet condition from Saturday until Tuesday, a statement of the extent of the injury on the latter day would include not only the damage resulting from the accident, but also such as might be attributable to the negligence of the appellee in failing to take reasonable care of the goods. It was undoubtedly the duty of the appellee after the accident to avoid the consequences of the wrong of the appellant, as far as he reasonably could ; and the Court very properly so instructed the jury by the plaintiff's second prayer, as well as by the defendant's second prayer. But whether the appellee exercised such reasonable care after the accident in averting the

consequences of the accident, was a question for the jury, when they came to the assessment of the damages. Now evidence as to the happening of the accident, and as to the appellees dealing with the injured property thereafter, allowing the wet goods to remain piled up on the floor since Saturday, had already gone to the jury. Under these circumstances, proof as to the condition of the goods on Tuesday was pertinent as tending to throw light upon the extent of the injury caused by the accident, and also as to whether the appellee dealt properly with the property thereafter.

After evidence as already stated, had been offered, the appellee was asked, " how much profit he was making out of his business per month at the time of and prior to the accident, and how much after, up to the first of May," to which he replied, " he was making an average profit of seventy-five dollars per month from his business prior to the accident ; and that for the first and second months thereafter he lost money, and the third month he was even." To the ruling of the Court in permitting the question to be asked and the answer to go to the jury, the appellant reserved his second exception.

The purpose of the suit, as appears from the allegations of the *narr.*, is to recover damages, first for injury to the appellee's property, and secondly for that the premises were rendered " unfit for occupancy," whereby his business was broken up and he was compelled to rent another store-room " at a less profitable position in the town, at which he was able to do but little business." At the time the evidence mentioned in the exception was offered there had been no proof as to the period during which the appellee was unavoidably prevented from occupying his premises. Even if this were not the case, it might have been possible, that the injury to his business had extended over the three months referred to by the witness ; and if the jury so found the loss incident thereto would have constituted an element to be regarded by them in estimating the damages. The appellee was . entitled under the pleadings, if the proof was

sufficient, to recover for all loss to his property and business as he unavoidably sustained by reason of the accident. It was therefore competent for him to show what the .profits of his business was before the accident (*Shafer* v. *Wilson*, 44 Md. 278) and if the business was not entirely broken up, he could show to what extent it had been injured.

We come now to the consideration of the instructions asked for respectively, by the parties. Two were presented by the appellee and granted; four by the appellant, of which the first and fourth were rejected, and the second and third granted.

The appellant's first prayer asserted as a proposition of law, that he could not be held responsible for the accident if the jury found that he had " employed an experienced and competent builder to make the alteration, and the alteration was made by said builder, without any negligence to the knowledge of the defendant." His fourth prayer presents substantially the same proposition ; it denies the liability of the appellant, " if he employed an experienced and competent builder to do the work who exercised ordinary care in the construction of the same." The fourth prayer was specially excepted to, because there was no evidence that the appellant did employ a " competent builder." We think the special exception was properly taken. The proof is uncontradicted that the person so employed was not a builder but a blacksmith, who had never built a house. Such a person might be very competent to do the iron work that was required, but cannot be regarded as possessed of the qualifications needed by one who proposes to make alterations involving the stability of a building.

But both of the prayers were properly rejected for other reasons. The proof shows the appellant himself adopted the plan of alteration, and employed Conner, the blacksmith, to do the work. The latter being but the servant of the former, working under his control and direction, the master would be liable for the consequences of the servant's neglect in executing the work. But this case goes

farther than this.   Here the appellee claims that the plan
of the alteration was grossly insufficient.   There was evi-
dence before the jury that the cause of the accident was
the improper methods of fastening the rods ; being not
welded together but only hooked by means of bent ends ;
and that such appliances were unsafe for the purpose of
supporting the roof.   The question presented by this state
of facts was so fully considered by this Court in the case
of *Deford* v. *The State use of Keyser*, 30 Md. 204, that
it becomes unnecessary to refer to any of the cases from
other Courts.   In *Deford's case* Mrs. Keyser was killed by
the fall of Deford's wall.   The right of the plaintiffs to re-
cover was rested on two grounds, viz : First, that the par-
ties whose negligent acts produced the injury were Deford's
servants, and secondly, that Deford did not take due care
to prevent the creation or erection of a nuisance on his
ground, which it was his duty to have prevented whether
the erection was by his servants or others.   In discussing
the last ground the Court said, " In all cases where a party
is in possession of fixed property, he must take care that it
is so used and managed that other persons shall not be in-
jured ; and whether it be managed by his own servants, or
by contractors or their servants makes no difference in re-
spect to his liability."   And further on, citing from *Hole* v.
*S. & S. Ry. Co.*, 6 H. & N. 488, the Court proceeds, " it
may be the same principle applies to cases where a man is
employed by another to do an act, which it is the duty of
the latter to do.   In such cases it is the duty of the owner
of the soil to inquire what is being done, to know what is
the plan, to see that the materials are good, and to take
care that no mischief ensues."   In the case at bar the ap-
pellant himself furnished the plan and employed a man to
do the work, and it became his duty to take care that no
mischief ensued.

The instructions granted by the Court by the first and
second prayers of the appellee, and the second and third of
the appellant, are in accordance with the views we have ex-

pressed, and fairly presented the case to the jury.  Finding no error the judgment will be affirmed.

*Judgment affirmed.*

(Decided April 1st, 1898).

