MILLER *v.* HOWARD ET AL.

[No. 50, October Term, 1954.]

150

*Decided January 17, 1955.*

*Motion for rehearing or reconsideration filed January 28, 1955, denied February 11, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*H. Carl Butler*, with whom was *Bernard M. Goldstein* on the brief, for the appellant.

*Charles F. Stein* and *George Washington Williams* for Arnold M. Lohrfinck.

Submitted on brief by *H. Ross Black* and *Rome & Rome* for Meredith R. Howard, trading as the Howard Plumbing Company.

Submitted on brief by *Paul L. Cordish* for David Goldstein.

DELAPLAINE, J., delivered the opinion of the Court.

Julia Miller, tenant of the house and lot situated at 1026 Patapsco Street in Baltimore, brought this action in tort in the Superior Court of Baltimore City against Meredith R. Howard, trading as Howard Plumbing Co., David Goldstein, her landlord, and Arnold M. Lohrfinck, the landlord's rental agent, to recover for personal injuries sustained when she fell into a ditch in the back yard.

Defendants demurred to the original declaration and also to the first amended declaration. Those demurrers were sustained with leave to amend. Demurrers to the second amended declaration were sustained without leave to amend. The Court thereupon entered judgment in favor of defendants, and plaintiff appealed from the judgment.

The second amended declaration contains two counts. The allegations of the first count are substantially as follows: (1) Defendants were engaged in excavating and repair work in the back yard of the rented premises, and in the course of the work they negligently and insufficiently filled in and formed a mound of soil over a portion of the yard; (2) plaintiff, in using the yard, was required to pass over the mound; (3) defendants knew, or should have known, that the mound constituted a danger to any one passing over it, but they failed and neglected to remedy the dangerous condition; (4) on December 22, 1950, plaintiff, having no knowledge that the condition was dangerous, and while exercising due care and caution, passed over the mound when a portion of it collapsed beneath her and she was caused to fall and sustain injuries; and (5) the accident was caused by the negligence of defendants without any contributory negligence of plaintiff.

The second count is practically the same as the first, except that it additionally alleges that plaintiff, although unaware that the condition was dangerous, notified defendants that it should be repaired and remedied, but they failed and neglected to repair or remedy it.

Even before the adoption of our simplified system of pleading, it was an established rule in Maryland that, although a certain fact may be the gist of the plaintiff's case, and hence an allegation of it is indispensable, yet it is not necessary to set forth the circumstances that merely tend to prove the truth of the alleged fact. The mere allegation of the fact, without detailing a variety of minute circumstances that constitute the evidence of it, is sufficient. Generally speaking, a declaration is sufficient under the modern system of pleading if it contains a plain statement of the facts necessary to constitute a ground of action. Where the injury complained of is an injury to the person, it is sufficient to describe it briefly and in general terms. To constitute a good cause of action in tort, the declaration should clearly and distinctly set forth the injuries complained of, and

allege that they were caused by the negligence of the defendant, and that the plaintiff himself exercised due care. *Maenner v. Carroll,* 46 Md. 193, 212; 1 *Poe, Pleading and Practice, Tiffany's Ed.,* secs. 559, 572, 586.

In expressing approval of the modern practice in Maryland, Chief Judge McSherry said: "And this doctrine obtains today when much of the verbiage and nearly all of the technical precision once required in pleadings have been dropped and abandoned. As only the facts constituting the cause of action need be stated, it is a cardinal rule that they must be averred or set forth with certainty by which term is signified a clear and distinct statement of them so that they may be understood by the party who is to answer them, by the jury who are to ascertain the truth of the allegations and by the Court who are to give judgment." *Philadelphia, Baltimore & Washington R. Co. v. Allen,* 102 Md. 110, 113, 62 A. 245.

Under the civil law, in cases of tenancies for short terms, the landlord was under the implied obligation, without any special agreement, to keep the premises in repair and, in the event of the destruction of any building by unavoidable calamity, to rebuild it. *Viterbo v. Friedlander,* 120 U. S. 707, 7 S. Ct. 962, 30 L. Ed. 776. The common law, on the contrary, does not impose any obligation upon the landlord to repair the premises or to rebuild or restore any building destroyed without his fault, in the absence of an agreement to do so. This Court, adopting the rule of the common law, has pointed out that if the tenant knows the condition of the property and rents it without requiring the owner to repair it, he takes it as he finds it. If he wants to require the landlord to keep the property in repair, he should bind him to do so by agreement. In the absence of such an agreement, the tenant must guard against dangers that are apparent to him. *Smith v. State, Use of Walsh,* 92 Md. 518, 48 A. 92, 51 L. R. A. 772; *Kirby v. Wylie,* 108 Md. 501, 512, 70 A. 213; *Ross v. Belzer,* 199 Md. 187, 85 A. 2d 799; *Walsh v. Schmidt,* 206 Mass. 405, 92 N. E. 496, 34 L. R. A., N. S., 798.

The corollary rule that logically stemmed from that common-law doctrine is that unless the landlord covenants to make repairs, he is not liable to his tenant for injuries sustained by him as a result of defects in the premises, in the absence of concealment of hidden dangers, or negligence so gross that it results in a nuisance. *Thompson v. Clemens,* 96 Md. 196, 53 A. 919; *Robinson v. Heil,* 128 Md. 645, 653, 98 A. 195; *Cowen v. Sunderland,* 145 Mass. 363, 14 N. E. 117; *Valin v. Jewell,* 88 Conn. 151, 90 A. 36. It has been stated that a lessor of land, who conceals or fails to disclose to his lessee any natural or artificial condition involving unreasonable risk of bodily harm to persons upon the land, is subject to liability for such harm caused thereby to the lessee and others on the land with the consent of the lessee or a sub-lessee after the lessee has taken possession, if (a) the lessee does not know of the condition or the risk involved, and (b) the lessor knows of the condition and realizes the risk involved therein and has reason to believe that the lessee will not discover the condition or realize the risk. 2 *Restatement, Torts,* sec. 358.

It is very important, however, to recognize the distinction between (1) those cases in which the landlord fails or refuses to make repairs to the rented premises, simply because he has not promised to do so, and therefore he is not legally bound to do so, and (2) those cases in which the landlord undertakes to make repairs but does the work in a negligent manner. Where the landlord undertakes to repair or improve the rented premises, whether or not he is bound by covenant to repair, he must exercise reasonable care in making such repairs or improvements, and he will be liable for any injuries sustained by the tenant as a result of his negligence, just as he would be if he were obligated by a covenant in the lease to do the work. *Evans v. Murphy,* 87 Md. 498, 40 A. 109; *Miller v. Fisher,* 111 Md. 91, 94, 73 A. 891; *Gill v. Middleton,* 105 Mass. 477, 7 Am. Rep. 548; *Wertheimer v. Saunders,* 95 Wis. 573, 70 N. W. 824. As stated by the American Law Institute, a lessor of land who, by pur-

porting to make repairs thereon while the land is in the possession of his lessee or by the negligent manner in which he has made such repairs has, as the lessee neither knows nor should know, made the land more dangerous for use, is subject to liability for bodily harm caused thereby to the lessee and others upon the land with the consent of the lessee or a sub-lessee. 2 *Restatement, Torts*, sec. 362.

Defendants contended that, even if they were negligent in filling in the excavation in the back yard, plaintiff was barred from recovery by contributory negligence. There is, of course, no exact test for determining whether a dangerous condition is so obvious that a person of ordinary prudence would see it and avoid it. That question must depend upon the facts and circumstances of each particular case. *Schwartz v. S. S. Kresge Co.*, 238 Mo. App. 1165, 185 S. W. 2d 37; *Coats v. Sandhofer*, Mo., 248 S. W. 2d 455, 458. Moreover, it is a well established rule that although a tenant is aware of a defective condition in some portion of the rented premises, he is not guilty of contributory negligence as a matter of law for using it unless the defect is so obviously dangerous that no person of ordinary prudence would be willing to use it. *Roman v. King*, 289 Mo. 641, 233 S. W. 161, 25 A. L. R. 1263; *O'Neill v. Sherill*, Mo., 254 S. W. 2d 263, 267.

In this case the declaration alleges that plaintiff's injuries were caused by the negligence of defendants without any contributory negligence of plaintiff. It sets forth the particular defect in the premises that caused the accident. It also alleges that plaintiff was unaware of the dangerous condition. Of course, where the allegations of a declaration indicate that danger on the premises was obvious, the landlord cannot be held liable for injuries sustained by the tenant in failing to avoid the danger. *Yaniger v. Calvert Bldg. & Construction Co.*, 183 Md. 285, 37 A. 2d 263; *Edelman v. Monouydas*, 186 Md. 479, 482, 47 A. 2d 41. But here the declaration alleges a latent danger, plaintiff claiming that the mound collapsed under her when she had no reason to

believe it would collapse. Hence, there is no allegation in the declaration from which an inference can reasonably be drawn that the mound was so obviously dangerous that no person of ordinary prudence would walk over it. For these reasons we have determined that the declaration states a good cause of action.

Finally, defendants attacked the declaration on the ground of duplicity. They stated that only one count contains the allegation that plaintiff notified defendants that the mound was dangerous, and that defendants failed and neglected to remedy the condition. They contended that failure to remedy a defective condition, after receiving complaint from a tenant, is an act of negligence that is separate and distinct from the original negligence; and therefore the two counts allege different causes of action.

We point out, however, that it has long been the practice in this State for a plaintiff to have two or more counts in his declaration whereby he either alleges the same grievance in different forms or joins different causes of action that are of the same character and are proper to be redressed in one action. Originally the object of this practice was to enable the plaintiff to recover in one suit on several similar causes of action, as, for example, for several assaults. The practice was extended to apply to differently worded statements of the same cause of action so as to avoid difficulties in proof or to obviate questions of law as to the sufficiency of one or more of the several modes of statement. Mr. Poe expressed his approval of the practice as follows: "In Maryland it has existed from the settlement of the colony, and is still freely exercised. Thus, in assumpsit, a careful pleader, when declaring on a special contract, seldom omits the common counts; and wherever the case will allow, or any doubt is entertained in regard to the evidence, or the sufficiency of any one mode of stating the cause of action, the judicious lawyer avails himself of his well-established right to state his client's case in

a variety of ways." 1 *Poe, Pleading and Practice, Tiffany's Ed.*, sec. 583.

One of the rules of the Court of Appeals now provides that the plaintiff may join in one action, either as independent or as alternate claims, as many claims as he may have against the defendant. General Rules of Practice and Procedure, part 2, subd. 3, rule 2(a).

As we hold that the Court below erred in sustaining the demurrers to the declaration, we must reverse the judgment entered in favor of defendants and remand the case for further proceedings.

*Judgment reversed and case remanded, with costs.*